CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

June 12, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILBERT T. SMITH, | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00453 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| B. P. DOTSON, | ) | By: Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

Wilbert T. Smith, a state inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against B. P. Dotson. At the time of the events giving rise to the action, Smith was assigned to Red Onion State Prison ("Red Onion" or "ROSP"), a prison operated by the Virginia Department of Corrections ("VDOC"). He claims that Dotson, a correctional officer at Red Onion, used excessive force against him on November 12, 2023, in violation of the Eighth Amendment. *See* Mem. Op. 1–2, ECF No. 39.

Dotson previously moved for summary judgment on the basis that Smith failed to exhaust available administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The district judge to whom the case was initially assigned denied the motion for summary judgment on February 20, 2026, after concluding that a genuine factual dispute existed as to whether Smith fully exhausted his administrative remedies. *See id.* at 5. Thereafter, the parties consented to jurisdiction before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c)(1). On May 7, 2026, the Court held an evidentiary hearing on the exhaustion defense raised by Dotson. For the reasons discussed herein, the Court concludes that Smith failed to exhaust available administrative remedies and, thus, will dismiss the action without prejudice.

## I. The PLRA's Exhaustion Requirement

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and federal courts do not have the discretion to waive the requirement, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). To satisfy the requirement, "proper exhaustion of administrative remedies is necessary," *id.* at 83, and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90.

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "Aside from this exception, 'the PLRA's text suggests no limits on an inmate's obligation to exhaust,'" *Williams*, 63 F.4th at 286 (quoting *Ross*, 578 U.S. at 639), and the Supreme Court has "made it clear that it will not read 'exceptions into statutory exhaustion requirements where Congress has provided otherwise,'" *id.* (quoting *Booth*, 532 U.S. at 741 n.6).

Failure to exhaust administrative remedies is an affirmative defense for which defendants bear the burden of proof. *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (citing *Jones v.*

*Bock*, 549 U.S. 199, 216 (2007)). If a defendant establishes that a plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff "to show that remedies were unavailable to him" through no fault of his own. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *see also Graham v. Gentry*, 413 F. App'x 660, 663–64 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

Exhaustion of administrative remedies "is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" *Small v. Camden Cnty.*, 728 F.3d 265, 270 (3d Cir. 2013) (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)). A judge "may resolve factual disputes relevant to the exhaustion issue without the participation of a jury," *Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (quoting *Small*, 728 F.3d at 271), as long as the exhaustion issue is not "intertwined with the merits of a claim that falls under the Seventh Amendment," *Perttu v. Richards*, 605 U.S. 460, 468 (2025).[1]

## II. Background

The following factual background is taken from affidavits submitted in the case and from the evidence submitted at the evidentiary hearing on May 7, 2026, which included testimony from Smith and Cathy Meade, the VDOC's Western Regional Ombudsman.[2]

---

[1] In *Perttu*, the Supreme Court held "as a matter of statutory interpretation that parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." 605 U.S. at 468; *see also id.* at 464 ("The parties agree that the exhaustion and First Amendment issues are intertwined, because both depend on whether Perttu did in fact destroy Richards's grievance and retaliate against him."). That scenario is inapplicable here. The exhaustion and Eighth Amendment questions presented in this case do not "depend on common factual issues." *Id.* at 472.

[2] The hearing was conducted via Zoom videoconferencing.

A.      The VDOC's Grievance Process

The VDOC has established a grievance process for inmates that is set forth in VDOC Operating Procedure ("OP") 866.1. *See* OP 866.1 (eff. Jan. 1, 2021; amended Apr. 1, 2023), T. Still Aff. Encl. A, ECF No. 29-1. Grievable issues include actions of staff members that affect an inmate personally. *Id.* § III(B)(1)(a).

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally. If a verbal complaint is not resolved to the satisfaction of an inmate, the inmate may submit an informal written complaint. *Id.* § I(D)(2). The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," *id.* and the designated staff member then has 15 days to provide a response, *id.* § I(D)(3).

If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. *Id.* § I(D)(4). Regular grievances generally must be submitted "within 30 days from the original incident or discovery of the incident." *Id.* § III(B)(5). If a regular grievance satisfies the intake criteria, staff must accept the grievance, log it into VACORIS (the Virginia Corrections Information System), and issue a grievance receipt within two working days. *Id.* § III(C)(4). When a regular grievance is accepted during the intake process, the "Facility Unit Head" or "Assistant Facility Unit Head" is responsible for providing a Level I response within 30 days of the issuance of the grievance receipt. *Id.* § III(F)(1)–(2). If an inmate is dissatisfied with the response, the inmate may submit a Level II grievance appeal within five days of receiving the Level I response. *Id.* § IV(B). Likewise, if a Level I response "is not returned to the inmate within 30 days [of the issuance of a grievance receipt] and an authorized continuance was not issued, the inmate can appeal to the Regional

4

Ombudsman in writing, including copies of the grievance receipt and other supporting documentation." *Id.* § III(B)(2). The designated staff respondent must respond to the grievance appeal within 20 days after receiving it. *Id.* § III(C). OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." *Id.* § V(B). Once an inmate has satisfied the exhaustion requirements, "the appeal respondent must notify the offender that all requirements have been exhausted." *Id.* § V(C).

B.      Smith's Efforts to Exhaust

Cathy Meade, who has been the Western Regional Ombudsman since December 2023,[3] testified that Smith's grievance records include an informal written complaint received on November 27, 2023, which was logged as ROSP-23-WRI-00464. In the written complaint, Smith asserted that he did not feel safe around Dotson and another correctional officer. Def.'s Evid. H'rg Ex. 2, ECF No. 55-2. On November 29, 2023, Lt. Begley responded that Smith was "being disruptive/combative towards staff" and that he had been "placed on the floor to regain control." *Id.*

On December 20, 2023, Smith signed and dated a regular grievance alleging that he had been assaulted by Dotson and another correctional officer at Red Onion on November 12, 2023. *See* Def.'s H'rg Ex. 3, ECF No. 55-3. Meade testified that the grievance department received the regular grievance on December 27, 2023, and logged it as ROSP-23-REG-00871. That same day, the grievance department at Red Onion issued a grievance receipt for the regular grievance. *See Id.* at 2. The grievance was forwarded to Red Onion Warden Rick White for a response. In a Level

---

[3] Prior to that position, Meade worked as a grievance coordinator at Red Onion.

I response dated January 25, 2024, White reported that the matter had been investigated and that the grievance was determined to be unfounded. *Id.* at 3.

Meade testified that a Level I response is typically date-stamped and returned to an inmate through the institutional mail, along with the original grievance and any supporting documentation and that a copy of the Level I response is placed in the inmate's grievance file. Smith's inmate grievance report indicates that the Level I response was "Sent to Offender" on January 26, 2024. Def.'s H'rg Ex. 1, ECF No. 29-1 at 44. By that date, Smith had been transferred to Wallens Ridge State Prison ("Wallens Ridge").[4] In that situation, Meade testified that the grievance office at Red Onion would have forwarded the Level I response and other original grievance paperwork by mail to the inmate at Wallens Ridge. In response to questions from the Court, Meade testified that a note documenting that the response had actually been forwarded to the inmate at his new place of confinement would typically not be recorded in VACORIS.

Meade testified that she had reviewed Smith's grievance file and that it includes no record of any Level II appeal being filed with respect to the relevant regular grievance, ROSP-23-REG-00871. Meade testified that if an appeal had been filed by Smith, she would have received it by mail or retrieved it herself from the mailroom at Red Onion or Wallens Ridge, where she regularly picks up mail; that the appeal would have been date-stamped with a Western Regional Ombudsman stamp on the date she received it; and that it would have been logged into VACORIS as a Level II appeal. Meade also testified that a Level II response would have been documented in VACORIS, Smith's grievance file, and his grievance report, and then returned to the facility at

---

[4] Smith's verified complaint indicates that he was transferred to Wallens Ridge on January 10, 2024. *See* ECF No. 1 at 4. The VDOC's Inmate and Supervisee Locator lists the same transfer date. *See* Inmate & Supervisee Locator, available at https://vadoc.virginia.gov/general-public/inmate-and-supervisee-locator (last accessed June 1, 2026).

which the grievance originated. Meade reiterated that her review of Smith's grievance records revealed that Smith did not file a Level II appeal.

For his part, Smith testified that he submitted multiple complaints about being assaulted by Dotson on November 12, 2023, and that he "sent everything out on time" like he was supposed to do. Smith then asserted that his mail was being held in an effort to prevent him from going through the grievance process, and he referred to an envelope with an alleged date of December 18, 2023. When asked about the contents of the envelope, Smith testified that it contained his "complaints," his "grievance attacks," and "everything" else that he sent to the Western Regional Administrator. Smith testified that when his property was returned to him after he was transferred to Wallens Ridge, the envelope and other items were missing.

When asked about the Level I grievance response dated January 25, 2024, which was introduced as Defendant's Exhibit 3, Smith testified that he "never received it" and that he would have "sent [a Level II appeal] out right on time" if he had received the response to his grievance. The Court then asked Smith about sworn statements he had previously submitted in response to Dotson's motion for summary judgment. In his amended response in opposition to the motion, Smith stated under penalty of perjury that he "filed an appeal to the regional ombudsman" on January 27, 2024, and that "the regional ombudsman stamped it as received on February 5, 2024." Pl.'s Am. Resp. Opp'n Summ. J. 1, ECF No. 34-1. In an accompanying affidavit, Smith indicated that he submitted the appeal "[a]fter *receiving a response* to the regular grievance" and that the appeal was "returned to [him] as 'unfounded' with a statement that all administrative remedies had been exhausted." Pl.'s Aff. ¶¶ 4–5, ECF No. 34-2. When asked if he in fact submitted an appeal, Smith responded that he "submitted everything like [he] was supposed to." In response to further questions, Smith testified that he "never received" the Level I response introduced as Defendant's

Exhibit 3 but that he "definitely submitted a Level II" appeal. When asked what he included in the Level II appeal, Smith testified that he could not remember because he had been traumatized by the underlying incident.

On cross-examination, defense counsel asked Smith when he submitted the Level II appeal. Smith testified that he submitted the appeal while he was still incarcerated at Red Onion but that he could not remember the exact date. When defense counsel noted that the Level I response to the regular grievance was not provided until after Smith had been transferred to Wallens Ridge, Smith responded that he is "traumatized" and that his "mind is messed up." Defense counsel then showed Smith the affidavit he had previously filed in the case, and Smith acknowledged that he would have been at Wallens Ridge when he allegedly filed the Level II appeal. Smith also acknowledged that he understood that he must file a Level II appeal to exhaust the administrative remedies available to inmates under OP 866.1.

### III. Discussion

The Court is tasked with determining whether Dotson has met his burden of establishing that Smith failed to exhaust his administrative remedies prior to filing suit. Although it is undisputed that Smith filed a written complaint and a regular grievance against Dotson, the parties dispute whether Smith appealed to Level II, as required by OP 866.1. The resolution of this factual dispute ultimately turns on whether the Court credits Smith's testimony that he filed a Level II appeal. At the evidentiary hearing, the Court had the "unique opportunity to evaluate the credibility of witnesses" and to "weigh the evidence accordingly." *Gorham v. Barksdale*, No. 7:15-cv-00437, 2018 WL 1595628, at *1 (W.D. Va. Mar. 31, 2018). Having considered the testimony and other evidence presented, the Court is unable to credit Smith's testimony on this issue and finds that Dotson has met his burden of establishing that Smith failed to exhaust his administrative remedies.

During the evidentiary hearing, the Court found Meade's testimony to be reliable and persuasive. As the Western Regional Ombudsman and a former grievance coordinator, Meade has extensive knowledge of the grievance procedures set forth in OP 866.1 and the manner in which grievances and appeals are processed. Meade credibly testified that Smith's grievance file includes no record of Smith appealing the Level I response to ROSP-23-REG-00871, the regular grievance in which Smith asserted that he had been assaulted by Dotson and another correctional officer on November 12, 2023. Meade's testimony is supported by the grievance report admitted as Defendant's Exhibit 1. The 30-page report lists dozens of written complaints received from Smith between July 2023 and February 2025, including written complaints against Dotson. It also includes a summary of the allegations against Dotson in ROSP-23-REG-00871 and the Level I response to the regular grievance. The report indicates that the response was sent to Smith on January 26, 2024, and it includes no mention of any Level II appeal having been filed with respect to that grievance.

The Court found Smith's testimony to be far less credible and reliable. For instance, while Smith testified at the evidentiary hearing that he previously possessed a December 18, 2023, envelope containing "everything" that he sent to the Regional Administrator, the regular grievance logged as ROSP-23-REG-00871 indicates that it was not signed by Smith until December 20, 2023. Similarly, Smith's testimony that he never received the Level I response to ROSP-23-REG-00871 was inconsistent with his earlier affidavit in which he indicated that he filed a Level II appeal *after* receiving a response to the regular grievance. Additionally, when questioned about the Level II appeal that he purportedly filed, Smith was unable to recall what he included in the appeal or when he submitted it. Although Smith initially testified that he submitted the Level II appeal while he was still incarcerated at Red Onion, he subsequently acknowledged having

9

previously stated under penalty of perjury that the Level II appeal was filed on January 27, 2024, after he was transferred to Wallens Ridge. Based on the inconsistencies between his testimony and his earlier sworn statements and other evidence, the Court is unable to credit Smith's testimony that he never received the Level I response to his regular grievance but nonetheless filed a Level II appeal. Instead, the Court finds that Smith failed to file a Level II appeal as required by OP 866.1 and that there is no evidence suggesting that he was prevented, through no fault of his own, from doing so.

IV. Findings of Fact

Consistent with the above discussion, the Court makes the following factual findings based on the evidence in the record and after evaluating the credibility of the witnesses:

1. As an inmate in the custody of the VDOC, Smith was required to utilize each step of the inmate grievance process set forth in OP 866.1.

2. To properly exhaust his claim of excessive force against Dotson, Smith was first required to submit an informal written complaint. It is undisputed that Smith complied with that requirement.

3. Smith was next required to submit a regular grievance. It is undisputed that Smith complied with that requirement.

4. On December 27, 2023, the grievance department at Red Onion documented receiving a regular grievance from Smith in which he complained of being assaulted by Dotson and another officer. The regular grievance was logged as ROSP-23-REG-00871, and the grievance department issued a receipt for the grievance on December 27, 2023.

5. On January 25, 2024, Red Onion Warden Rick White issued a Level I response to ROSP-23-REG-00871. White determined that the grievance was unfounded.

6.  Smith's grievance report indicates that the Level I response was sent to Smith on January 26, 2024. By that date, Smith had been transferred to Wallens Ridge, and the grievance department at Red Onion would have sent the Level I response to Smith at that facility.

7.  Smith had five days from the date he received the Level I response to appeal the response to Level II. Alternatively, if Smith had not received a Level I response within 30 days of being issued a grievance receipt for ROSP-23-REG-00871, Smith could have filed an appeal to the Regional Ombudsman.

8.  Despite knowing that he must file a Level II appeal to fully exhaust the administrative remedies available to inmates under OP 866.1, Smith did not file a grievance appeal related to his claim of excessive force against Dotson.

9.  The administrative remedies afforded by OP 866.1 were available to Smith at Red Onion and Wallens Ridge, and there is no evidence that anyone prevented him from exhausting his administrative remedies.

## V. Conclusions of Law

Based on the foregoing factual findings, and in light of the entire record, the Court concludes that Smith failed to fully exhaust available administrative remedies prior to filing suit, as required by the PLRA. Accordingly, the action must be dismissed without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (noting that failure to exhaust under the PLRA should result in dismissal without prejudice) (citing *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004)). An appropriate order will be entered.

Entered: June 12, 2026

Joel C. Hoppe
United States Magistrate Judge

11